IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| SOUTHERN WALK AT BROADLANDS HOMEOWNER'S ASSOCIATION, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:13-CV-1353 (GBL/JFA) ) |
| OPENBAND AT BROADLANDS, LLC, *et al.*, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on two Motions to Dismiss for Lack of Jurisdiction and Failure to State a Claim. The first is filed by Defendants Broadlands Associates and Broadlands Communications, LLC (collectively "Broadlands") (Doc. 10). The second is filed by Defendants OpenBand Multimedia, LLC, OpenBand at Broadlands, LLC, and OpenBand of Virginia, LLC (collectively "OpenBand") (Doc. 14). This case involves a series of contracts which collectively grant OpenBand the exclusive right to provide internet, video, and phone services to Plaintiff Southern Walk at Broadlands Homeowner's Association, Inc. ("Southern Walk"). Southern Walk is the homeowners' association for a real estate development located in Loudoun County, Virginia. Southern Walk seeks to invalidate the contracts on the ground that they violate a federal regulation proscribing video-exclusivity clauses and on numerous state-law grounds, including unconscionability and cessation of purpose. While the federal-law claim (Count I) seeks only to invalidate OpenBand's video-exclusivity rights, the state-law claims (Counts II to VII) seek to invalidate the contracts as a whole, reaching phone- and internet-exclusivity rights as well as video-exclusivity rights.

There are three issues before the Court. The first issue is whether an Article III case or controversy exists between Southern Walk and Broadlands where Broadlands is not the beneficiary of the utility-exclusivity rights conferred by contract but where Broadlands, as the real estate developer, was an interested party to the contracts. The Court **GRANTS** Broadlands' Motion to Dismiss as to Count I because Broadlands cannot enforce utility-exclusivity rights it does not possess and because it is the enforcement of those rights by OpenBand, not Broadlands, which has allegedly harmed Southern Walk.

The second issue is whether OpenBand's voluntary relinquishment of its video-exclusivity rights moots the case against OpenBand where the relinquishment was spurred not by a desire to evade judicial review but by recognition that the Fourth Circuit's invalidation of video-exclusivity rights over another real estate development applied to OpenBand's video-exclusivity rights over Southern Walk. The Court **GRANTS** OpenBand's Motion to Dismiss as to Count I because OpenBand's reasons for relinquishing its rights and its admission that the Fourth Circuit's ruling applies to its rights over Southern Walk are persuasive evidence that the "allegedly wrongful behavior could not reasonably be expected to recur," *Friends of Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citation omitted). As such, the case or controversy over video exclusivity is moot, and the Court lacks subject matter jurisdiction over Count I.

The third issue is whether the Court should exercise supplemental jurisdiction over Southern Walk's remaining state-law claims where it is unclear whether Virginia law recognizes freestanding claims for unconscionability and unenforceable servitudes and where the state-law claims are based primarily on state common-law contract doctrine. The Court **GRANTS** Broadlands' and OpenBand's Motions to Dismiss the remaining state-law claims (Counts II, III,

IV, V, VI, and VII) and **REMANDS** the claims to the Circuit Court for Loudoun County because resolution of the claims would not implicate questions of federal law or policy and because, as a matter of federalism, Virginia courts should be allowed to decide potentially novel issues of Virginia law.

## I. BACKGROUND

Plaintiff Southern Walk at Broadlands Homeowner's Association, Inc. ("Southern Walk") is the homeowners' association for 1,117 individually-owned residential properties comprising the Southern Walk at Broadlands real estate development. (Doc. 1, ¶ 13.) Southern Walk is suing two sets of defendants, the Broadlands Defendants and the OpenBand Defendants. The Broadlands Defendants consist of Broadlands Associates LLP, the developer of Southern Walk, and its affiliated entity Broadlands Communications, LLC (collectively "Broadlands"). The OpenBand Defendants consist of three interlocking entities—OpenBand at Broadlands, LLC, OpenBand Multimedia LLC, and OpenBand of Virginia, LLC (collectively "OpenBand")—which provide video, internet, and phone services to Southern Walk.

### A. Establishment of the Homeowners' Association

Prior to selling the residences, Broadlands Associates LLP ("Broadlands Associates") established a homeowners' association for the development. One purpose of the homeowners' association was to administer video, internet, and phone services on behalf of the residents. (*Id.* ¶ 14.) The Articles of Incorporation state that the homeowners' association shall "provide, or cause to provide for, the installation and maintenance of an exclusive private utility system within the Property[.]" (Doc. 1-1, at 3.) Broadlands Associates remained in control of the homeowners' association from its creation in November 2001 until at least December 2009. (Doc. 1, ¶¶ 14–16.) While under the control of Broadlands Associates, the homeowners' association entered into

various contracts with OpenBand. Collectively, these contracts gave OpenBand the exclusive right to provide video, internet, and phone services to the development. (*Id.* ¶ 28.)

### B. Utility-Exclusivity Scheme

Of the contracts forming the utility-exclusivity scheme, three hold special relevance to the present action: (i) the Telecommunications Services Agreement ("TSA"), (ii) the Declaration of Covenants, Conditions, and Restrictions ("CC&Rs"), and (iii) the Deed of Easement for Telecommunications Facilities ("Deed of Easement").

Southern Walk and OpenBand executed the first contract, the TSA, in November 2001. (*Id.* ¶ 25.) The TSA gives OpenBand the exclusive right to provide video, internet, and phone services to Southern Walk and requires Southern Walk to pay OpenBand a flat monthly fee for the services. (Doc. 1-4, at 5.) Southern Walk received a minimum 10-percent discount on video and phone services and a time-staggered set of discounts on internet services, beginning with a minimum of fifty percent for the first year and stabilizing to a minimum of ten percent for the fifth year onward. (*Id.* at 10.) The initial term of the TSA is twenty-five years with a right for OpenBand to extend the TSA for four additional ten-year periods. (*Id.* at 11.)

Southern Walk and Broadlands executed the second contract, the CC&Rs, in October 2001.[1] (Doc. 1, ¶ 34; Doc. 1-6, at 1.) The CC&Rs declare Broadlands' easement over video, internet, and phone services. Specifically, the CC&Rs declare Broadlands' "blanket easement" for "constructing, operating, maintaining, adding to, altering or replacing . . . all above and below ground structures and appurtenances necessary for . . . video, telephonic, internet data services or other communications, data or media (collectively 'Utilities')[.]" (Doc. 1-6, at 13.) The CC&Rs

---

[1] The CC&Rs list Van Metre Homes at Broadlands, LLC ("Van Metre") as an additional party. According to the Complaint, Van Metre was "the primary developer of Broadlands" and owned and controlled Broadlands Associates. (Doc. 1, ¶ 18.) Van Metre is not a named defendant in this action.

4

state that Broadlands may "grant to a third party a transferable exclusive right to operate Utilities on the Property." (*Id.*)

The third contract, the Deed of Easement, was executed in November 2001. (Doc. 1-8, at 1.) It transfers the utility easement from Broadlands to OpenBand. (*Id.* at 3.) The Deed of Easement binds Southern Walk to the transfer, stating that Southern Walk "shall not take any action inconsistent with the terms of this Easement Deed and the rights herein granted." (*Id.* at 7.)

### C. OpenBand's Enforcement of the Video-Exclusivity Scheme

Southern Walk claims that the utility-exclusivity scheme created by the TSA and its ancillary contracts ("Ancillary Agreements") violates a final rule of the Federal Communications Commission ("FCC"). (Doc. 1, ¶¶ 122–126.) In March 2007, the FCC issued a Notice of Proposed Rulemaking seeking comments on the propriety of video "exclusivity clauses," clauses which grant a cable operator the exclusive right to provide video services to a multiple dwelling unit ("MDU"). *See Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 192 (4th Cir. 2013) (citation omitted). The FCC received several comments that video-exclusivity clauses "bar[] new entry into MDUs by wire-based" video providers and that use of such clauses was "widespread" and growing. *In the Matter of Exclusive Service Contracts for Provision of Video Services in Multiple Dwelling Units and Other Real Estate Developments*, 2007 WL 3353544, at *3, 22 FCC Rcd. 21828 (2007). Based on these comments, the FCC issued a final rule voiding video-exclusivity clauses. The FCC Final Rule states that "[n]o cable operator . . . shall enforce or execute any provision in a contract that grants to it the exclusive right to provide any video programming service (alone or in combination with

other services) to a MDU. All such exclusivity clauses are null and void." 47 C.F.R. § 76.2000(a).

Count I seeks a declaratory judgment that the FCC Final Rule voids the video-exclusivity provisions of the TSA and Ancillary Agreements. (Doc. 1, ¶¶ 122–126.) Additionally, the Complaint alleges that the video-exclusivity provisions inhibit Southern Walk's efforts to persuade other video providers to service the development. (*Id.* ¶¶ 110–111.) According to the Complaint, Southern Walk had several meetings in 2011 with Verizon and Comcast representatives. The representatives told Southern Walk that Verizon and Comcast could not service the development because of the access restrictions imposed by OpenBand. (*Id.* ¶¶ 97–100.)

## II. PROCEDURAL HISTORY

Southern Walk first challenged the validity of the TSA and Ancillary Agreements in an action filed in May 2011. (*See Southern Walk at Broadlands Homeowners Ass'n v. OpenBand at Broadlands, LLC*, 1:11-cv-517 (GBL/TCB), Doc. 1.) In this predecessor action, also before Judge Lee, Southern Walk sought a declaratory judgment that the FCC Final Rule invalidated the video-exclusivity provisions of the TSA and Ancillary Agreements. OpenBand vigorously defended the action and argued that the FCC Final Rule did not reach the TSA or Ancillary Agreements. In August 2011, Judge Lee dismissed Southern Walk's First Amended Complaint with prejudice, holding that Southern Walk lacked standing to bring the declaratory judgment action. (*See Southern Walk*, 1:11-cv-517 (GBL/TCB), Doc. 51, at 14–24.) The Fourth Circuit affirmed the standing-based dismissal but vacated the dismissal with prejudice and remanded with instructions to dismiss without prejudice. See *Southern Walk at Broadlands Homeowners Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 186–87 (4th Cir. 2013).

Around this time, the homeowners' association of another real estate development, Lansdowne on the Potomac, filed a parallel action against OpenBand. The Lansdowne homeowners' association sought a declaratory judgment that the FCC Final Rule invalidated OpenBand's video-exclusivity scheme over Lansdowne. OpenBand vigorously defended the action and maintained that the FCC Final Rule did not reach the video-exclusivity scheme. In June 2012, Judge Trenga held that the homeowners' association had Article III and statutory standing to seek a declaratory judgment. *See Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, Case No. 1:11-cv-872 (AJT/TCB), 2012 WL 2462301, at *7–8 (E.D. Va. June 27, 2012). Turning to the merits, Judge Trenga held that the FCC Final Rule voided OpenBand's video-exclusivity rights over Lansdowne. *Id.* at *12–15. In April 2013, on the same day the Fourth Circuit affirmed Judge Lee's ruling, the Fourth Circuit issued *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187 (4th Cir. 2013), affirming Judge Trenga's ruling. Specifically, the Fourth Circuit held that the FCC Final Rule voided OpenBand's video-exclusivity rights over Lansdowne because (i) OpenBand was an "open video system operator" as defined in the Final Rule and the (ii) video-exclusivity provisions spread across various contracts with Lansdowne were "provision[s] in a contract" subject to the Final Rule. *Id.* at 202–06.

Several months later, Southern Walk filed this action, again seeking a declaratory judgment that the FCC Final Rule voids OpenBand's video-exclusivity scheme over Southern Walk. This action differs from the predecessor action in two ways: (i) it adds Broadlands as a defendant and (ii) it alleges additional state-law grounds for invalidity. In November 2013, Broadlands and OpenBand filed their respective Motions to Dismiss. (*See* Docs. 10, 14.) Both Motions are now before the Court.

### III. STANDARD OF REVIEW

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal where the court lacks jurisdiction over the subject matter of the action. Fed. R. Civ. P. 12(b)(1). Where a federal court finds subject matter jurisdiction lacking, it must dismiss the case. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). Moreover, the plaintiff bears the burden of proving the existence of federal subject matter jurisdiction. *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 371 (4th Cir. 2012) (citing *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009)).

There are two ways in which a defendant may present a Rule 12(b)(1) motion. First, a defendant may present a facial attack on the complaint and argue that the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). In such a case, the court assumes the truth of all facts alleged by the plaintiff. *Id.* (quoting *Bain*, 697 F.2d at 1219).

Alternatively, a defendant may use a Rule 12(b)(1) motion to attack the existence of subject matter jurisdiction apart from the pleadings, essentially averring "that the jurisdictional allegations [are] not true." *Id.* (quoting *Bain*, 697 F.2d at 1219). When faced with this second form of a challenge, the court may regard the pleadings as mere evidence and consider evidence outside the pleadings to determine the existence of jurisdiction. If necessary, the court may hold an evidentiary hearing. *Id.* (citing *Bain*, 697 F.2d at 1219; *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). As a result, the plaintiff's allegations carry no presumption of

truth, and a dispute of material facts does not preclude the trial court from evaluating the merits of the claims underlying jurisdiction. *Vuyyuru*, 555 F.3d at 347.

### B. Motion to Dismiss for Failure to State a Claim

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) should be granted unless the complaint "states a plausible claim for relief" under Rule 8(a). *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). No such assumption of truth is afforded to "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citations omitted). Nor is the court obligated to assume the veracity of the legal conclusions drawn from the facts alleged. *Adcock v. Freightliner LLC*, 550 F.3d 369, 374 (4th Cir. 2008) (citing *Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085–86 (4th Cir. 1979)). Thus, the court's review involves the separation of factual allegations from legal conclusions. *Burnette v. Fahey*, 698 F.3d 171, 180 (4th Cir. 2012). In addition to the complaint, the court will examine "documents incorporated into the complaint by reference," as well as those matters properly subject to judicial notice. *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (citations omitted); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

The complaint must contain sufficient factual allegations, which if taken as true, "raise a right to relief above the speculative level" and "nudge [the] claims across the line from

conceivable to plausible." *Vitol*, 708 F.3d at 543 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The facial plausibility standard requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck*, 708 F.3d at 554 (quoting *Iqbal*, 556 U.S. at 678). The plausibility requirement imposes not a probability requirement but a mandate that the plaintiff "demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.' " *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, a complaint is insufficient if it relies on "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Id.* (citing *Iqbal*, 556 U.S. at 679 and *Twombly*, 550 U.S. at 557). The complaint must present " 'enough fact to raise a reasonable expectation that discovery will reveal evidence' of the alleged activity." *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must present sufficient nonconclusory factual allegations to support a reasonable inference of the plaintiff's entitlement to relief and the defendant's liability for the unlawful act or omission alleged. *See Francis*, 588 F.3d at 196–97 (citing *Iqbal*, 556 U.S. at 678–79, and *Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 969–70 (4th Cir. 1992) (en banc)).

## IV. ANALYSIS

### A. Broadlands' and OpenBand's Motions to Dismiss Count I

The jurisdictional foothold in this case is Count I, Southern Walk's only federal claim. Count I seeks a declaratory judgment that the FCC Final Rule voids the video-exclusivity provisions of the TSA and Ancillary Agreements. OpenBand and Broadlands challenge the existence of subject matter jurisdiction over Count I. Because this challenge is relevant to the

Court's exercise of supplemental jurisdiction over Southern Walk's state-law claims, the Court begins with the jurisdictional analysis.

Having conducted this analysis, the Court **GRANTS** Broadlands' Motion to Dismiss as to Count I because no Article III case or controversy exists between Broadlands and Southern Walk. Additionally, the Court **GRANTS** OpenBand's Motion to Dismiss as to Count I because OpenBand has met its "heavy burden" of making it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Friends of Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citation omitted).

### i. The Court Lacks Subject Matter Jurisdiction over Count I as to Broadlands.

The Court holds that there is no Article III case or controversy between Southern Walk and Broadlands over the validity of the TSA and Ancillary Agreements. Therefore, the Court has no jurisdiction to entertain OpenBand's claims against Broadlands. Article III of the Constitution confines the federal courts to adjudicating actual "cases" or "controversies." U.S. Const. art. III, § 2. This cap on judicial power reflects the view that courts should decide "concrete legal issues, presented in actual cases, not abstractions." *United Public Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947).

> One of the controlling elements in the definition of a case or controversy under Article III is standing. The requisite elements of Article III are well established: A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.

*Hein v. Freedom from Religion Fdn., Inc.*, 551 U.S. 587, 598 (2007) (internal quotation marks and citations omitted). Thus, for there to be a case or controversy as to Broadlands, Southern Walk must allege that Broadlands engaged in some form of unlawful conduct, the harm of which is likely to be redressed by invalidating the TSA and Ancillary Agreements.

Southern Walk fails to make the necessary allegation. Per the Complaint, the harm befalling Southern Walk stems from enforcement of the utility-exclusivity rights. (*See* Doc. 1, at 28 ("Southern Walk and its members are being harmed by the violation of federal law through the continued *enforcement*, and threat of *enforcement*, of the exclusivity arrangement created by the TSA and the Exclusivity Agreements." (emphasis added).) Thus, an Article III case or controversy only exists between Southern Walk and the enforcer of those rights. It is the enforcer of those rights who has allegedly harmed Southern Walk and it is the enforcer of those rights against whom an invalidation remedy would have any real-world effect.

Of course, the enforcer of those rights is the beneficiary of those rights, since only the beneficiary of a right has the capacity and authority to enforce the right. In this case, it is clear that OpenBand, not Broadlands, is the beneficiary of the utility-exclusivity rights at issue and that OpenBand, not Broadlands, attempted to enforce those rights. Because Broadlands could not have inflicted the alleged harm and because Broadlands cannot by continued nonenforcement stop the alleged harm, no justiciable dispute lies between Southern Walk and Broadlands.

Southern Walk argues that because Broadlands is a party to the TSA and Ancillary Agreements, its acknowledgment of voidability would redress the harm to Southern Walk. (*See* Doc. 21, at 5–6 n.5.) The legally cognizable harm, however, does not stem from the existence of the contracts. It stems from their enforcement. A declaratory judgment of invalidity against the enforcer of those rights—OpenBand—is what would stop the alleged harm. Conversely, a declaratory judgment of invalidity against Broadlands would do nothing to restrict OpenBand's ability to enforce its rights and inflict the alleged harm.

For these reasons, the Court GRANTS Broadlands' Motion to Dismiss as to Count I.

### ii. The Court's Jurisdiction over Count I as to OpenBand Is Mooted by OpenBand's Voluntary Relinquishment of its Video-Exclusivity Rights in Response to an Applicable Fourth Circuit Ruling.

The Court holds that no Article III case or controversy remains over video-exclusivity rights because OpenBand has voluntarily relinquished its rights not in an effort to evade judicial review but in response to an applicable Fourth Circuit decision invalidating OpenBand's video-exclusivity rights over another development. The Court is persuaded that it would be unreasonable to expect OpenBand to reassert its video-exclusivity rights, when OpenBand recognizes that reassertion of its rights could trigger federal regulatory violations and when OpenBand has taken affirmative steps to dismantle its video-exclusivity scheme by reaching out to competitors and developing video-servicing contingencies.

There is no question that Southern Walk and OpenBand were in a live dispute over the validity of video exclusivity. In the predecessor action, OpenBand vigorously defended, and Southern Walk vigorously contested, the ability of OpenBand to enforce its video-exclusivity rights. The question is not whether an Article III case or controversy ever existed over video exclusivity. The question is whether an Article III case or controversy remains. OpenBand argues that "the purported conflict over video exclusivity is both hypothetical and contrary to the current state of affairs," (Doc. 15, at 19–20), because it stopped enforcing its video-exclusivity rights over Southern Walk in response to a Fourth Circuit decision invalidating its video-exclusivity rights over Lansdowne.

OpenBand's argument implicates the doctrine of mootness. The doctrine of mootness, like its counterpart the doctrine of ripeness, concerns "the appropriate timing of judicial intervention." *Renne v. Geary*, 501 U.S. 312, 320 (1991). It requires that a court intervene when a controversy is alive and present, not before the controversy has transpired and not after the

controversy has abated. The requirement of a live controversy must be satisfied before the merits of a claim may be adjudicated, "for if [the] case is moot, we lack subject-matter jurisdiction." *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 370 (4th Cir. 2012).

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011) (internal quotation marks and citation omitted). Mootness can transpire in a variety of ways. For example, a statute's repeal can moot a challenge to the statute's unconstitutionality, *see, e.g.*, *Bigelow v. Virginia*, 421 U.S. 809, 817–18 (1975), while a prisoner's release can moot his efforts to enforce parole-eligibility procedures, *see, e.g.*, *Weinstein v. Bradford*, 423 U.S. 147 (1975).

Relevant to this Motion, an action can be mooted by the defendant's voluntary cessation of his allegedly wrongful conduct. Voluntary cessation, however, does not render a case moot per se. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Rather, it renders a case moot only "if subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189. The defendant carries the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Id.* (citation omitted).

OpenBand has met its burden. In April 2013, after the Fourth Circuit invalidated OpenBand's video-exclusivity rights over Lansdowne, OpenBand responded by ceasing to enforce its parallel rights over Southern Walk. (*See* Doc. 15, at 19.) The record does not reveal a single instance of enforcement occurring *after* issuance of the *Lansdowne* decision. (*See* Doc. 25, at 3–4.) Additionally, following oral argument on the Motions to Dismiss, OpenBand filed with the Court an acknowledgment that the *Lansdowne* decision applies to its rights over Southern

14

Walk. (*See* Doc. 29.) Specifically, OpenBand "acknowledge[d] that the rulings of the United States Court of Appeals for the Fourth Circuit [in *Lansdowne*] and the judgment of the United States District Court for the Eastern District of Virginia [in *Lansdowne*] apply equally to the parallel agreements at issue in this case[.]" (Doc. 29, at 1–2); *see also Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (noting that a defendant's acknowledgment of liability supports a finding of mootness).

It is clear that OpenBand relinquished its video-exclusivity rights not to fabricate grounds for mootness but because it recognized the *Lansdowne* decision as invalidating its rights over Southern Walk. *See Sheely*, 505 F.3d at 1184 (noting that "whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit" is relevant to voluntary-cessation analysis). Moreover, OpenBand's voluntary relinquishment was accompanied by affirmative steps to dismantle the video-exclusivity scheme taken *prior* to the filing of this action. First, OpenBand explains that it reached out to competitors about providing access to Southern Walk and that it did so *before* the present action was commenced. (Doc. 15, at 19–20.) Second, OpenBand sent a letter to Southern Walk, dated prior to the filing of this action, discussing video-service contingencies "should OpenBand be prevented from distributing programming over our existing video service platform." (Doc. 1-21.)

In short, OpenBand relinquished its rights because it had strong reason to believe that if it did not, OpenBand would be in violation of the FCC Final Rule. Avoiding regulatory violations and their associated penalties is a powerful reason to refrain from unlawful conduct. This is not a case where the defendant merely asserts that it would be "uneconomical" to renew the allegedly wrongful practice, *cf. United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203

(1968), or where the defendant alleges an act of voluntary cessation without more, *cf. MCIMetro Access Transmission Servs. of Va. v. Christie*, 310 F. App'x 601, 605 (4th Cir. 2009).

Southern Walk raises several arguments against mootness. First, Southern Walk points to the Fourth Circuit's language in *Lansdowne* that validity of the video-exclusivity clauses was "ripe for adjudication." (Doc. 30, at 2.) Southern Walk confuses the concepts of mootness and ripeness. A question can be "ripe for adjudication" or fit for judicial review and yet the need to answer the question can dissipate in the face of the statute's repeal, the prisoner's release, or as here, the issuance of an applicable circuit-court ruling. Second, Southern Walk points to the language in *Lansdowne* that the ability to "voluntarily relinquish . . . exclusivity . . . cannot mean that the easement is untouched by the FCC Order." (*Id.* at 2–3.) This language concerns the effect of voluntary relinquishment on a regulation's applicability, not on jurisdiction's availability. Third, Southern Walk argues that OpenBand in its supplemental response to the Court and its statements at oral argument "effectively made an . . . offer of judgment." As such, it argues, Southern Walk is entitled to summary judgment on Count I. (*Id.* at 3–4.) Although OpenBand can concede the invalidity of its video-exclusivity rights, it cannot by mere concession create Article III jurisdiction. Article III jurisdiction exists by operation of the Constitution, not a party's consent. The Court is powerless to act on OpenBand's concession of invalidity because the Court is without jurisdiction.

For these reasons, the Court GRANTS OpenBand's Motion to Dismiss as to Count I. The Court is persuaded that there is no reasonable expectation that OpenBand will reassert its video-exclusivity rights over Southern Walk. Any case or controversy over video-exclusivity is moot, depriving the Court of Article III jurisdiction over Count I.

**B. Broadlands' and OpenBand's Motions to Dismiss Counts II to VII**

The Court GRANTS Broadlands' and OpenBand's Motions to Dismiss as to Counts II through VII and REMANDS Counts II through VII to the Circuit Court for Loudoun County. Having dismissed Southern Walk's sole federal claim, the Court declines to exercise supplemental jurisdiction over the remaining state claims. Counts II through VII seek a declaratory judgment invalidating the whole of the TSA and Ancillary Agreements, including the phone- and internet-exclusivity provisions untouched by the FCC Final Rule. Counts II through VII sound primarily in state common-law doctrines, including (i) nonseverability, (ii) unconscionability, (iii) uncertainty, (iv) unenforceable servitudes, and (v) cessation of purpose. An additional count (Count IV) alleges illegality on the ground that Loudoun County denied OpenBand a franchise to operate an open video system.

In 28 U.S.C. § 1331 cases, a district court has supplemental jurisdiction over state-law claims that "form part of the same case or controversy" as the federal-law claims. *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1996); *see also* 28 U.S.C. § 1367(a). "[W]hen all federal claims have been extinguished[,]" however, "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over [the remaining] state claims." *Shanaghan*, 58 F.3d at 110; *see also* 28 U.S.C. § 1367(c)(3). In deciding whether to retain jurisdiction, district courts consider the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110 (citations omitted). If all federal claims are eliminated before trial, the balance of these factors usually favors the declination of supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Having dismissed Southern Walk's only federal claim, the Court declines to exercise supplemental jurisdiction over the state-law claims because they raise a potentially novel issue of

Virginia law and do not involve issues of federal law or policy distinct from those raised in the dismissed count. The novel issue is whether Virginia law permits a plaintiff to bring freestanding claims for declaratory judgment that a contract is unconscionable or an enforceable servitude. In dismissing Southern Walk's First Amended Complaint in the predecessor action, the Court expressed serious doubt about whether freestanding claims of unconscionability and unenforceable servitudes exist under Virginia law. (*See Southern Walk at Broadlands Homeowners Ass'n v. OpenBand at Broadlands, LLC*, Case No. 1:11-cv-517 (GBL/TCB) Doc. 71, at 30–31.) Southern Walk raises the same unconscionability and unenforceable-servitudes claims in its new Complaint yet fails to address the Court's doubts about their viability.

As the Supreme Court held in *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), the federal courts should avoid "[n]eedless decisions of state law . . . both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* at 726. Because it would be unfair for Southern Walk to press claims in this Court that Virginia law may not recognize and because the state claims raise no questions within the limited province of the federal courts, the Court **GRANTS** OpenBand's and Broadlands' Motions to Dismiss as to Counts II, III, IV, V, VI, and VII, and REMANDS Counts II, III, IV, V, VI, and VII to the Circuit Court for Loudoun County.

## V. CONCLUSION

The Court **GRANTS** Broadlands' and OpenBand's Motions to Dismiss as to Count I and hereby **DISMISSES** Count I **WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Additionally, the Court **GRANTS** OpenBand's and Broadlands' Motion to Dismiss as to Counts II, III, IV, V, VI, and VII, and hereby **DISMISSES** Counts II, III, IV, V, VI, and VII

**WITHOUT PREJUDICE**. The Court **REMANDS** Counts II, III, IV, V, VI, and VII to the Circuit Court for Loudoun County.

This Order **CLOSES** the case.

**IT IS SO ORDERED.**

ENTERED this _13th_ day of May, 2014.

Alexandria, Virginia
5/13/14

                                          /s/
                                   Gerald Bruce Lee
                                   United States District Judge